873 A.2d 571 (2005)
377 N.J. Super. 417
Christopher SIMEONE and Eleanor Braun, Plaintiffs-Appellants,
v.
ZONING BOARD OF ADJUSTMENT OF the TOWNSHIP OF EAST HANOVER, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 2004.
Decided February 17, 2005.
*572 Carmine D. Campanile, Livingston, argued the cause for appellants (Commisa *573 & Campanile, attorneys; Mr. Campanile, on the brief).
Vincent A. Pirone, Bloomfield, argued the cause for respondent.
Before Judges CUFF, WEISSBARD and HOENS.
The opinion of the court was delivered by
CUFF, J.A.D.
Plaintiff Christopher Simeone is the contract purchaser of an undersized lot. He appeals from an order upholding the denial of his application for bulk and dimensional variances. We affirm.
Christopher Simeone entered into a contract to purchase a vacant lot from plaintiff Eleanor Braun. The lot is 50 feet wide and 150 feet deep. The lot was created in 1965. Prior to that date it had been part of a larger parcel situated on the corner of Ridgedale Avenue and Ward Place in the Township of East Hanover. The lot contained 150 feet of frontage on Ridgedale Avenue and 200 feet of frontage on Ward Place. Until 1956, the property had been owned by Gertrude Schoonover. On October 18, 1956, she sold the property to James Braun, the current owner's deceased husband, and his business partner, Francis Shinn and title was held in the name of the partnership. At this time, the partnership also owned an adjacent parcel of land on Ward Place. This lot, known as Lot 49, contained frontage of 100 feet on Ward Place and depth of 200 feet; a single-family house and detached garage had been constructed on the Ward Place lot. The Brauns lived in this house for thirty-five to forty years until it was sold sometime in the 1990s.
On April 20, 1965, the partnership conveyed a portion of the corner lot to Vitale Ciavetta and Mary Ciavetta. The deed describes a lot with 150 feet of frontage on Ridgedale Avenue and 150 feet along Ward Place. The remainder of the property was conveyed on July 1, 1965, by the partnership to James and Eleanor Braun. This 50 × 150 foot lot with frontage on Ward Place has remained vacant since that time. The lot has been taxed as a separate lot since at least 1970 and shown on township maps as a separate lot since 1986. The Brauns occupied the house on Lot 49 until sometime in the 1990s.
The 50 × 150 foot lot, now owned solely by Eleanor Braun, is situated in the single-family residential R-20 zone. The zoning ordinance requires 20,000 square foot lots with minimum frontage of 100 feet and depth of 200 feet. The zone also requires a combined side yard of 35 feet. The record reveals that most homes in the neighborhood conform to the zoning requirements. Any discrepancies that exist are minor.
Simeone, the contract-purchaser, proposes to build a two-story, single-family home on this undersized lot. The proposed house is thirty-two feet wide; the side yards are nine feet. The design requires two variances from the bulk and side yard requirements.
Following a hearing at which the contract purchaser and a professional planner testified, defendant Zoning Board of Adjustment (Board) adopted a resolution denying the requested relief. First, the Board found that the hardship was self-created. Second, it found that the proposed dwelling was excessively large for the lot, and the benefits of deviating from the zoning requirements did not substantially outweigh any detriment to the established zoning in the neighborhood.
Plaintiffs filed a timely complaint in lieu of prerogative writs to review the denial of its application for variances. Following oral argument, Judge Bozonelis held that *574 the undersized lot did not merge with the larger parcel because the subdivision pre-dated the decision in Loechner v. Campoli, 49 N.J. 504, 231 A.2d 553 (1967), and the adoption of the Municipal Land Use Law N.J.S.A. 40:55D-1 to -136. He also ruled that the history of the creation of the lot did support a finding of undue hardship. He found, however, that the Board's concerns about the size of the proposed house on a lot significantly smaller than homes allowed by the zoning and found in the neighborhood were well grounded. He held that the Board's determination that plaintiffs had not established the negative criteria was not arbitrary, capricious or unreasonable.
On appeal, plaintiffs argue that the lot is a non-conforming isolated lot; therefore, they were entitled to the bulk and dimensional variances requested pursuant to N.J.S.A. 40:55D-70(c)2. They contend that they established undue hardship and that the evidence submitted met the negative criteria. The Board responds that plaintiffs' hardship is self-created, that the Board is not estopped from considering whether the undersized lot merged with the larger parcel, and that the applicants failed to meet the negative criteria.
The threshold issue in this appeal is the status of the undersized lot owned by Eleanor Braun. The parties have characterized the issue as merger. Our review of the record, however, convinces us that there are two issues concerning this lot: one, illegal subdivision; and two, merger of the newly subdivided lot with Lot 49. Merger is characterized by common ownership of more than one contiguous lot. See Loechner, supra, 49 N.J. at 507, 231 A.2d 553; Somol v. Bd. of Adj. of Morris Plains, 277 N.J.Super. 220, 228, 649 A.2d 422 (Law Div.1994). A subdivision, on the other hand, is characterized by "[a]ny reduction in the size of a parcel or tract of land by a division into two or more smaller parcels." Loechner, supra, 49 N.J. at 511, 231 A.2d 553. Here, the lot that is the subject of this appeal was created by dividing the original 200 × 150 foot lot acquired by the Braun and Shinn partnership into two lots. One lot was reconfigured as a 150 × 150 foot lot and sold in 1965. A second lot, 50 × 150 feet and fronting on Ward Place, was also conveyed in 1965 by the partnership to Braun and his wife. This division of the original lot into two lots was a subdivision.
The record does not provide any information whether the subdivision of the existing lot and the creation of the non-conforming 50 × 150 foot lot conveyed to the Brauns were authorized by any municipal body at the time. In fact, the record is barren of any information whether defendant Township had enacted any measures to govern subdivision of property within the Township in 1965. Measured by current principles governing subdivision of property, the subdivision would be considered illegal. N.J.S.A. 40:55D-37; Fox v. Township of West Milford, 357 N.J.Super. 123, 127-28, 814 A.2d 637 (App.Div.), certif. denied, 176 N.J. 279, 822 A.2d 608 (2003); Dalton v. Ocean Township, 245 N.J.Super. 453, 462, 586 A.2d 262 (App.Div.), certif. denied, 126 N.J. 324, 598 A.2d 884 (1991).
Although it appears that the subdivision may have been illegal, this does not end our inquiry. This court has recognized that municipal action taken after the course of many years, which misleads a property owner as to the status of its property, may estopp the municipality from refusing to grant a variance on the basis of self-created hardship. Scardigli v. Borough of Haddonfield, 300 N.J.Super. 314, 319-20, 692 A.2d 1012 (App.Div.1997).
In Scardigli, a contract purchaser sought a variance to build a house on an undersized lot. Id. at 316, 692 A.2d 1012. *575 The lot and the lot contiguous to it had been owned by a married couple for fourteen years. Id. at 317, 692 A.2d 1012. In 1992, the husband died, and through her attorney, the widow sought an opinion from the Borough whether she could sell the two lots separately. Ibid. Relying on a mistaken understanding of a minor subdivision approval granted in 1977 when the couple acquired the second lot, the planning board attorney opined that the two lots had not merged. Ibid. Relying on this opinion, the widow sold one of the lots. Shortly thereafter, the widow entered a contract to sell the second lot. The sale was conditioned on the grant of bulk variances due to zoning revisions over the years which left both lots undersized. Id. at 318, 692 A.2d 1012.
On appeal, an objecting neighbor contested the grant of the variance based in part on the property owner's reliance on the advice rendered by the planning board attorney. Id. at 319, 692 A.2d 1012. This court agreed that the planning board attorney lacked authority to render an interpretation of the zoning ordinance to a private citizen and to bind a municipal agency based on that advice. Ibid. The court noted, however, that the municipality had notice of the sale of one lot and took no action to set aside the conveyance. Ibid. This court interpreted the failure of the municipality to file a complaint to set aside the conveyance pursuant to N.J.S.A. 40:55D-55 as official recognition of the separate nature of each lot. Ibid. We also commented that principles of elemental fairness may require the municipality to recognize an illegal lot as a developable lot. Id. at 319-21, 692 A.2d 1012.
Fox, however, takes issue with the suggestion in Scardigli that municipal inaction to set aside a subdivision is tantamount to a de facto recognition of the separate nature of a lot. Fox, supra, 357 N.J.Super. at 127-28, 814 A.2d 637. On the other hand, Fox concerned a recent attempt to subdivide a parcel without formal proceedings. In Fox, this court was not faced with an almost forty-year subdivision and long-standing municipal action treating the parcel as a separate lot.
The issue of merger arises because at the time the corner lot was subdivided, the Brauns owned Lot 49. The record reveals that in 1956, title to Lot 49 was in the name of the partnership. Thus, there was a possible merger of the newly subdivided lot with Lot 49. In Loechner, the Court held that multiple contiguous lots in the same ownership merge, thereby requiring subdivision approval before any portion of the merged lot may be sold. Loechner, supra, 49 N.J. at 511, 231 A.2d 553. The Court, however, addressed a fact situation in which all of the contiguous lots that had been assembled by a single owner were undersized. Id. at 507, 231 A.2d 553. The Court did not address the situation of a subdivision of a conforming lot that remained conforming afterwards and conveyance of a newly subdivided undersized lot to the owner of an adjacent conforming lot. Indeed, this court has recognized that "before the Loechner decision there was no clear law in this area." Somol, supra, 277 N.J.Super. at 228, 649 A.2d 422. We recognized, however, that merger may be found based on the facts on a case-by-case basis. Id. at 229, 649 A.2d 422. The record does not reveal, however, when, if ever, title to Lot 49 was transferred from the partnership to James Braun or to the couple as individuals.
Here, the subdivision occurred in 1965, almost forty years ago. Since that time, the lot has been depicted on tax and zoning maps as a lot. The municipality has assessed the lot as a separate lot for tax purposes since its creation, and the owners paid taxes on the lot through the years. In addition, Lot 49 was conveyed by Mrs. *576 Braun in the 1990s apparently without any notice or recognition of the murky status of the undersized lot. Having conveyed the corner parcel in 1965 and Lot 49 in the 1990s, Braun would be left with a lot either zoned into inutility or salable only to an adjacent landowner probably at forced sale rates. Therefore, we agree with Judge Bozonelis that under these circumstances the existence of this isolated undersized lot was not a self-created hardship for Braun or her contract purchaser which would bar relief in the nature of a variance.
We now consider the Law Division's affirmance of the Board action. A zoning board's decision on a variance may be set aside only when arbitrary, capricious or unreasonable. Cell South v. Bd. of Adj. of West Windsor Township, 172 N.J. 75, 81, 796 A.2d 247 (2002); New Brunswick Cellular Tel. Co. v. Borough of South Plainfield Bd. of Adj., 160 N.J. 1, 14, 733 A.2d 442 (1999). This standard recognizes that local officials who are familiar with the community's characteristics and interests are best equipped to pass on variance applications. Kramer v. Bd. of Adj., Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965). Because of their knowledge of local conditions, boards must be allowed wide latitude in the exercise of their delegated discretion. Ibid.; see also Lang v. Bd. of Adj. of N. Caldwell, 160 N.J. 41, 58, 733 A.2d 464 (1999).
Thus, "courts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Id. at 58-59, 733 A.2d 464. Board decisions are presumed valid and the party attacking them has the burden of proving otherwise. Cell South, supra, 172 N.J. at 81, 796 A.2d 247. A court will not disturb a board's decision unless it finds a "clear abuse of discretion." Id. at 82, 796 A.2d 247. The standard of review is the same for both the Law Division and an appellate tribunal. Bressman v. Gash, 131 N.J. 517, 529, 621 A.2d 476 (1993).
Simeone applied for the bulk and dimensional variances pursuant to N.J.S.A. 40:55D-70(c)(1). The statute provides:
Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to [N.J.S.A. 40:55D-62 to -68.6] of this act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship.
As in all variance cases, the applicant bears the burden of proving both the positive and negative criteria. Nash v. Bd. of Adj. of Morris Township, 96 N.J. 97, 102, 474 A.2d 241 (1984). That is, the applicant bears the burden to prove that it fits the criteria for the variance remedy, such as the shape of the property, exceptional topographic conditions, or an extraordinary or exceptional situation uniquely affecting the property, and that the relief will not undermine the zoning plan to the detriment of the community. Id. at 106, 474 A.2d 241; Menlo Park Assocs. v. Planning Bd. of Woodbridge, 316 N.J.Super. 451, 460, 720 A.2d 626 (App.Div.1998), certif. denied, 160 N.J. 88, 733 A.2d 493 (1999).
An applicant can satisfy the negative criteria if the proposed structure *577 would not be significantly out of character in style or size. Somol, supra, 277 N.J.Super. at 233-34, 649 A.2d 422. Here, however, the side yards and frontage of the home proposed by the contract buyer are dramatically different than the requirements in the zone and the houses in the neighborhood. In fact, the applicant's planner testified that the only non-conformity from the zoning plan that he noticed in the neighborhood was that many of the lots are ten square feet less than the required 20,000 square feet. Furthermore, he cited no houses in the neighborhood with deficient side yards. The Board found that the requested relief would produce a dwelling with substantially narrower side yards than existed in the neighborhood. It also found that a thirty-two foot wide house on a fifty-foot lot where one hundred feet is required would create an impression of crowding because none of the other houses in the neighborhood and the zone bore such characteristics. These findings are well supported by the record. So too, is the Board's ultimate conclusion that the requested relief would undermine the purpose of the zoning ordinance and the zoning plan. In short, the Board's conclusion that the applicant had not met the negative criteria was not arbitrary, capricious or unreasonable.
This is not to say, however, that no house may be constructed on this isolated undersized lot. The law is to the contrary. Gallo v. Mayor and Township Council of Lawrence Township, 328 N.J.Super. 117, 121, 744 A.2d 1219 (App.Div.2000). Our review is limited, however, to the only plan proposed for this lot-the thirty-two foot wide house.
Affirmed.